NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| REINA I. GONZALEZ, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> MICHAEL J. ASTRUE, : <br> Commissioner of Social Security, : <br> : <br> Defendants. : <br> : | **Hon. Dennis M. Cavanaugh** <br><br> **OPINION** <br><br> Civil Action No. 12-CV-00483 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

      This matter comes before the Court upon the appeal of Reina Gonzalez ("Plaintiff" or "Claimant") from the final decision of the Commissioner of Social Security ("Commissioner"), denying Claimant's claims for a period of disability and disability insurance benefits under Title II of the Social Security Act ("Act"), her application for supplemental security income under Title XVI of the Act, and upon the decision of Administrative Law Judge ("ALJ") Michal L. Lissek after a First and Second Remand. This Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure.

      After reviewing the submissions to this Court by both parties, the final decision entered by the ALJ is **reversed and remanded**.

## I. BACKGROUND

### A. PROCEDURAL HISTORY

On February 8, 2008, Plaintiff Reina Gonzalez filed an application for Supplemental Social Security ("SSI") and Social Security Disability ("SSDI") benefits. (Transcript ("Tr.") 20). The Claim was initially denied on June 20, 2008 and then denied again on reconsideration on March 13, 2009. (Tr. 20). Plaintiff then appealed by filing a request on March 26, 2009, for hearing before an Administrative Law Judge. (Tr. 20). On June 16, 2010, hearing on Plaintiff's claims was held in Newark, New Jersey before Administrative Law Judge ("ALJ") Michal L. Lissek. (Tr. 30). On July 7, 2010, ALJ Lissek issued a denial of Plaintiff's claims for SSI and SSDI benefits. (Tr.17). Plaintiff filed a timely appeal to the Appeals Council, which denied Plaintiff's appeal in a decision dated December 1, 2011. (Tr. 1). The subsequent and instant appeal was filed on January 25, 2012. Plaintiff alleges onset date of March 3, 2000. (Tr. 23). For the purposes of the SSDI claim, Plaintiff has a Date Last Insured of September 30, 2005. (Tr. 28).

### B. FACTUAL HISTORY

#### 1. The Findings of the Administrative Law Judge

ALJ Lissek made the following fourteen findings regarding Plaintiff's application for a period of disability and disability insurance benefits: 1) Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2005; 2) Plaintiff has not engaged in substantial gainful activity since March 3, 2000, the alleged onset date (20 C.F.R. 404.1571 *et seq.,* and 416.971 *et seq.*) 3) since the alleged onset date of disability, March 3, 2000, Plaintiff has the following severe impairments: sinusitis, post-nasal drip, severe headaches, and pain when sitting, and on the

established onset date of disability, March 9, 2007, Plaintiff has had the following severe impairments: osteoarthritis in the hips, back, and shoulders (20 C.F.R. 404.1520(c) and 416.920(c)); 4) since the alleged onset date of disability, March 3, 2000, Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404 §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926); 5) prior to March 9, 2007, Plaintiff has residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to work that can be learned in one month or less, can reach occasionally overhead and reach in all other directions frequently, cannot work around unprotected heights or around extremes in temperature, undue amounts of dust, odors or fumes or known pulmonary irritants; 6) As of March 9, 2007, Plaintiff is capable of performing sedentary work as defined in past relevant work as defined in 20 CFR 404.1567(a) and 416.967(a) except Claimant can only lift and carry 6-7 pounds; sit for 4 hours in an 8-hour workday at 20 minute intervals; stand for 20-25 minutes at a time; walk for 20-25 minutes at a time; and bend occasionally; 7) Prior to March 9, 2007, Claimant was capable of performing past relevant work as a sewing machine operator. This work did not require the performance of work-related activities precluded by Claimant's residual function capacity. (20 CFR 404.1565 and 416.965); 8) Beginning on March 9, 2007, Plaintiff's residual functional capacity has prevented Claimant from being able to perform past relevant work (20 CFR 404.1565 and 416.965); 9) Claimant was a younger individual age 45-49 on March 9, 2007, the established disability onset date (20 CFR 404.1563 and 416.963); 10) Claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964); 11) Claimant does not have work skills that are transferable to other occupations within the residual function capacity as defined above (20

3

CFR 404.1568 and 416.968); 12) Since March 9, 2007, considering Claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that Claimant can perform (20 CFR 404.1560(c) and 404.1566, 416.960(c), and 416.966); 13) Claimant was not disabled prior to March 9, 2007, (20 CFR 404.1520.(f) and 416.920(f)) but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)); 14) Claimant was not under a disability within the remaining of the Social Security Act at any time through September 30, 2005, the date last insured (20 CFR 404.315(a) and 404.320(b)).

## 2. Plaintiff's Medical History and Evidence

According to ALJ Lissek, Plaintiff's disability claims since March 3, 2000, have been related to sinusitis, post-nasal drip, severe headaches, and pain when sitting. (Tr. 23). Beginning on March 9, 2007, Plaintiff has had osteoarthritis in the hips, back, and shoulders. (Tr. 23).

### a.    *Medical Evidence Prior to the onset date of March 9, 2007*

Plaintiff was prescribed medication from Dr. E.T. Marcelo in April of 1992 for sinusitis and post nasal drip. Dr. Marcelo reported that he had last seen Plaintiff on February 25, 2008, and that Plaintiff's sinusitis and post-nasal drip were unrelated to her disability claim. (Tr. 227). Further, in a general medical report, a question asked, "Can you provide, based on your medical findings, your medical opinion regarding your patient's ability to do work related activities?" Dr. Marcelo wrote, "N/A" above the question. (Tr. 227). Lastly, when asked, "Are there any other conditions that limit this indiviudal's ability to do work related activities?" Dr. Marcelo wrote, "? Not for ENT," and, "She is claiming disability because of her arthritis. It is not connected with [sic] problem I was treating her for." (Tr. 227).

Dr. Jose Munin treated Plaintiff for hip, leg, and back pain from November 2003, through June 2007. In November of 2003, Plaintiff underwent a bone density (Dexa) scan which revealed T-scores for the AP Spine of 100% and T-score of 115% for the femur which was also normal. (Tr. 218). Plaintiff also received treatment for headaches due to sinus problems and high blood pressure, Plaintiff was prescribed Proventil, Relafen, Zyrtec, Flexeril, and 25 mg of HCTZ. ( Tr. 215). There are eleven pages of notes from Dr. Munin, seven are in his own hand writing, four are part of a computerized bone density report. (Tr. 215–225). ALJ Lissek, commented that Dr. Munin's notes were, ". . . somewhat illegible, the balance of these progress notes indicated that the claimant's clinical examinations were unremrkable (Exhibit 1F)." (Tr. 23).

    b.  *Medical Evidence Beyond March 9, 2007*

Since March 9, 2007, Plaintiff had seen Dr. Frederick Brandt and physical therapists at Palisades Medical Center. (Tr. 251). Plaintiff sought treatment for osteoarthritis, rotator cuff tendinitis, back and neck pain. (Tr. 25). An X-ray of Plaintiff's lumbar spine obtained on July 30, 2008 revealed degenerative changes. (Tr. 25). X-rays of Plaintiff's right shoulder and cervical spine were negative. Treatment consisted of physical therapy and prescriptions for non-steroidal anti-inflammatory medications. (Tr. 25). On March 5, 2008, Plaintiff's initial physical therapy evaluation stated Plaintiff's social history, which indicates that she works as a babysitter/housekeeper, and lives with her family in a first-floor apartment. (Tr. 251). In August of 2008, Dr. Brandt referred Plaintiff to Hoboken University Metal Center Outpatient Physical Therapy Department for treatment of lower back pain and bilateral hip pain. Plaintiff reported that she had a history of lower back pain and hip pain for the past three years with a pain on a pain scale from eight to ten. She also reported that she was currently receiving occupational therapy for hand

and shoulder pain. Plaintiff stated that her symptoms of pain were increased with sitting, standing, walking and moving. At her initial lumbar spine evaluation, it was reported that Plaintiff had restricted ranges of motion in the lumbar spine and bilateral hips on the examination with pain. (Tr. 290).

From July 2007 through July 2008, Plaintiff saw Dr. Francisco Gonzalez for asthma, sinusitis, hypertension, and osteoarthritis. While his notes were largely illegible, they indicate Plaintiff was seen for general health maintenance and medication refills. (Tr. 25, 271). In November of 2007, Plaintiff had a CT guided needle biopsy of the liver that revealed steatohepatitis. She was referred for a GI evaluation with Dr. Caride, who stressed the need for weight loss and exercise. (Tr. 25, 286–288).

On May 29, 2008, consultative examiner, Dr. Elena Napolitano reported that Plaintiff ambulated in the examination room with a mildly antalgic gait, but Plaintiff sat comfortably in the chair, and transferred onto the examination room table with minimum discomfort. (Tr. 25, 352). Plaintiff had negative straight leg raise testing in the supine and sitting positions, motor strength testing was 5/5 throughout and mostly in tact, and Plaintiff's upper extremity reflexes were in tact. (Tr. 352). Plaintiff's reflexes to the bilateral patella and Achilles reflex were symmetrically decreased. (Tr. 25). The range of motion was full at the right shoulder, where there was a negative impingement sign. (Tr. 25). Cervical spine range of motion was full, and there was a negative Spurling test. The range of motion was remarkable for decreased right hip internal rotation to twenty degrees, the left hip internal rotation was limited to thirty degrees. (Tr. 25). Plaintiff was unable to squat due to hip pain, but was able to walk on her heels and walk on her toes. (Tr. 25, 353). In addition, Dr. Napolitano commented that claimant had a past medical history significant for

osteoarthritis of bilateral shoulders, as well as bilateral hips, with daily chronic pain. (Tr. 353). Plaintiff had limited ambulation greater than four blocks, and required an assistive device such as a cane. (Tr. 354). There was no evidence of cervical or lumbosacral radiculopathy, Plaintiff's motor and sensory testing were intact, and there were decreased reflexes symmetrically to the lower extremities. (Tr. 354). Lastly, Plaintiff is unable to carry anything in her right upper extremity, and can only carry up to about ten pounds in the left upper extremity; Plaintiff also requires increased time to get dressed and perform her daily living activities. (Tr. 354).

On February 9, 2009, Plaintiff saw consultative examiner Dr. Alexander Hoffman. (Tr. 323). Dr. Hoffman reported that physical examination of Plaintiff revealed positive straight leg raising on the left to about sixty degrees, and on the right to about forty-five degrees., at which time Plaintiff expressed lower back pain. (Tr. 25, 324). Dr. Hoffman assessed her with some bursitis of the right shoulder, with maybe arthritic changes in the knees and lower back. (Tr. 324). Further, there was no major involvement of the hands, no acute swelling, no crepitus and no increased heart or joint swelling. (Tr. 325–331). Dr. Hoffman reported that Plaintiff had received injections in the shoulder and back. (Tr. 323).

An updated MRI of the lumbar spine obtained on October 2, 2009, revealed multilevel degenerative spondylosis with type I and type 2 discogenic sclerosis at L2-l3 levels; a small foraminal disc herniations at L3-L4 ; disc desiccation and a small broad based disc bulge and a small inferior subligamentous disc herniation centrally and to the right at L4-L5; and at the L5-S1 level, there was disc desiccation and minimal posterior disc space narrowing with a small bulge of the posterior annulus was slightly more prominent on the right than the left. (Tr. 386). Plaintiff was referred for another course of physical therapy with little if any improvement in her pain symptoms

and required prescriptions for pain medications. (Tr. 386, 390).

      **3**.  **Disability Reports from Plaintiff, Field Office, and Appeals Council**

  The record contains several disability reports. The first disability report comes from the field office. It is dated February 20, 2008, and the interview was face-to-face, conducted by I. Londono. (Tr. 149–51). Plaintiff had no difficulty in hearing, reading, breathing, understanding, coherency, concentrating, talking, answering, sitting, standing, walking, seeing, or writing. (Tr. 150). However, Plaintiff had difficulty using hands, in particular, her right hand was swollen. (Tr. 150). Furthermore, Plaintiff came accompanied by her husband, who helped refresh Plaintiff's memory when she could not recollect specific answers. (Tr. 150).

  The next disability report is undated and comes from Plaintiff. (Tr. 178). The report states the date of the last disability report, which was February 20, 2008. This report states that since the last disability report, "Osteoarthritis has affected her spine." (Tr. 178). The report states that, "Basic work related functions significantly restricted," since the last disability report. (Tr. 178). The report states that Plaintiff's injuries "minimally" affect Plaintiff's ability to care for her personal needs, yet her daily activities have been significantly restricted since her last disability report. (Tr. 182).

  The next disability report is undated. (Tr. 152). The report states that Plaintiff is not working, and that she became unable to work on March 3, 2000. (Tr. 153). Plaintiff's past work experience states that she was a floor girl at a clothes/sample factory from 1989 through March of 2000. The report further shows states that in this job Plaintiff did not use machines, tools or equipment, did not use technical knowledge or skills, and did not do any writing or complete reports. (Tr. 154). The report further states that at this job, Plaintiff walked, reached, and handled big objects for 8 hours a day, and Plaintiff leaves the question of how many ours per day Plaintiff sat,

unanswered.

The next disability report in the record is a disability report to the Appeals Council from Plaintiff. This form is undated, but states that the date of the last disability report was August 15, 2008. (Tr. 193). In this report, Plaintiff has no change in her illness, injuries, or conditions since her last completed disability report. (Tr. 193). Further, Plaintiff states that she has not worked since her last disability claim. (Tr. 195).

The final disability report in the record is dated May 5, 2009. (Tr. 198). It was completed by James Langton, her attorney from Langton and Alter. (Tr. 198, 205). As a change in a injury or condition since the last report, Plaintiff responded that her conditi0on remains disabling. (Tr. 198). As a new physical or mental limitation from illness or injury since the last disability report, Plaintiff responded that her, "ability to perform basic work related activities is significantly restricted." (Tr. 198).

### 4. Plaintiff Reina Gonzalez's Testimony

Plaintiff testified at the ALJ hearing on June 16, 2010. (Tr. 30). Plaintiff's attorney, James Langton (phonetic), was present, as well as a Spanish interpreter, by telephone, Bernie Beltran. (Tr. 32). Plaintiff testified that she is fifty years old, that she was born in El Salvador, that she went to middle school in El Salvador, but has a limited education. (Tr. 34). Plaintiff can read and write a little bit of English. (Tr. 36). When questioned by her attorney, Plaintiff testified that she has undergone tests and X-rays by her doctors, and that they determined that she has arthritis throughout her body. (Tr. 39). She also testified that she has had pain injections to help her wiht pain, and that she had pain all over her body for the past eight years. Plaintiff also testified that she can walk slowly for only two blocks before the pain increases, that she can only lift six to seven pounds before

9

pain increases, that she could not lift six or seven pounds repeatedly, and that she can only sit for twenty minutes before feeling an increase in pain. (Tr. 41).

Plaintiff was questioned by ALJ Lissek as to the extent of her pain. When asked what problems Plaintiff has with performing normal chores, Plaintiff responded that she does everything in the house, breakfast, watering the flowers, and some clearing up; however, she can only do these things very slowly. (Tr. 44). When asked if she could work at a job that allowed a mix of sitting and standing, Plaintiff stated that she could work at such a position, but not at a job that required only standing or only sitting. (Tr. 45). After the interpreter clarified the question, Plaintiff responded that she could try to stand and sit while working for six to eight hours, but the pain would increase as the hours went on, so she probably could not work such a position. (Tr. 46).

When asked about her work history, Plaintiff described that in the beginning of her career, she worked in a clothing factory, and it was her duty to pick up bundles of work and classify them. (Tr. 50). After doing that for about three and half years, she became the sewing machine operator. (Tr. 51). After questioning about when her past work ceased, ALJ Lissek asked the Vocational Expert, Patricia Shashono, what kind of work an individual such as Plaintiff was capable of. (Tr. 53). To do so, Shashono had to consider an individual who could only stand and sit occasionally, could not work in extreme temperatures, humidity, wetness, or other environments that serve as pulmonary irritants, would be able to work in. (Tr. 53). Shashono decided that the only types of work are basic assembly type of options, where there is a stand sit option on a bench level, and also in light packaging and small products assembly. (Tr. 53). In addition, Shashono determined that Plaintiff could not do her past relevant work. (Tr. 53).

Plaintiff's attorney questioned Shashono about the ability of an arthritic individual, such as

10

Plaintiff, being able to keep up with production requirements of an assembly worker. (Tr. 58–69). Shashono conceded that if Plaintiff had to consistently alternate between standing and sitting, it would affect Plaintiff's ability to meet the production requirement. (Tr. 59). Accordingly, Shashono determined that the ability to meet the production quota would vary based on the stipulations of a specific employer. (Tr. 69).

## II.   STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla . . . but may be less than a preponderance." Woody v. Sec'y of Health & Human Servs, 859 F.2d 1156, 1159 (3d Cir. 1988). It "does not mean a large or considerable amount of evidence, but rather such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (citation omitted). Not all evidence is considered "substantial." For instance,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g. that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to support his ultimate conclusions. Stewart v. Sec'y of Health, Educ. & Welfare, 714 F.2d 287, 290 (3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). As such, it does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). "The district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)). A Court must nevertheless "review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). In doing so, the Court "must 'take into account whatever in the record fairly detracts from its weight.'" Id. (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).

To properly review the findings of the ALJ, the court needs access to the ALJ's reasoning. Accordingly,

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)). A court must further assess whether the ALJ, when confronted with conflicting evidence, "adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). If the ALJ fails to properly indicate why evidence was rejected, the court is not permitted to determine whether the evidence was discredited

or simply ignored. See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

### III. APPLICABLE LAW

#### A. THE FIVE-STEP PROCESS

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. A claimant is considered disabled under the Social Security Act if he or she is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). A claimant bears the burden of establishing his or her disability. Id. § 423(d)(5).

To make a disability determination, the Commissioner follows a five-step process pursuant to 20 C.F.R. § 416.920(a). Under the first step, the Commissioner must determine whether Plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). Substantial gainful activity is work that involves doing significant and productive physical or mental duties, and is done (or intended) for pay or profit. 20 C.F.R. § 416.972. If the claimant establishes that she is not currently engaged in such activity, the Commissioner then determines whether, under step two, the claimant suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). The severe impairment or combination of impairments must "significantly limit[] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The impairment or combination of impairments "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909. If the Commissioner finds a severe impairment or combination of impairments, he then proceeds to step three, where he must determine

whether the claimant's impairment(s) is equal to or exceeds one of those included in the Listing of Impairments in Appendix 1 of the regulations ("Listings"). 20 C.F.R. § 416.920(d). Upon such a finding, the claimant is presumed to be disabled and is automatically entitled to benefits. Id. If, however, the claimant does not meet this burden, the Commissioner moves to the final two steps.

Step four requires the Commissioner to determine whether the claimant's residual functional capacity sufficiently allows her to resume her previous work. 20 C.F.R. § 416.920(e). If the claimant can return to her previous work, then she is not disabled and therefore cannot obtain benefits. Id. If, however, the Commissioner determines that the claimant is unable to return to her prior work, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner, who must find that the claimant can perform other work consistent with her medical impairments, age, education, past work experience and residual functional capacity. 20 C.F.R. § 416.920(g). Should the Commissioner fail to meet this burden, the claimant is entitled to social security benefits. 20 C.F.R. § 416.920(a)(4)(v).

### B. THE REQUIREMENT OF OBJECTIVE EVIDENCE

Under the Act, disability must be established by objective medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." Id. Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

Id. Credibility is a significant factor. When examining the record "the adjudicator must evaluate the intensity, persistence and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186 (July 2, 1996). Thus, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. Id. The requirement for a finding of credibility is found in 20 C.F.R. § 416.929(c)(4). A claimant's symptoms, then, may be discredited "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 416.929(b); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

## IV.   ANALYSIS

On appeal, Plaintiff argues that the Commissioner's final administrative decision is not based on the substantial evidence of the record and asks this Court to remand that decision, order a new hearing, and a new decision. (Pl. Br. 8). Plaintiff argues that the ALJ's determination of disability onset was arbitrary and that a medical expert was needed. The ALJ determined that Plaintiff was disabled on March 9, 2007. Plaintiff was disabled due to severe osteoarthritis in the hips, back and shoulder. Plaintiff argues that as such a disease is progressive, the ALJ's determination of onset date was arbitrary. Further, Plaintiff asserts that testimony of a medical expert is necessary to determine the onset date because of Social Security Ruling 83-20, and because Plaintiff's condition was slowly progressive. Plaintiff notes that had she been legally disabled fifteen months earlier, she would be eligible for disability insurance. (Tr. 9–11).

### A. THE REQUIREMENT OF A MEDICAL EXPERT

Social Security Rulings "are binding on all components of the Social Security

15

Administration." 20 C.F.R. § 402.35(b)(1). Social Security Ruling 83–20 ("SSR 83–20") provides the relevant evidence to be considered when establishing the onset date of a disability. SSR 83-20, 1983 WL 31249.

> The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations. Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence.

SSR 83–20.

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR 83–20.

The HALLEX Manual provides guidance as to when an ALJ may or must obtain a medical expert's opinion. HALLEX I-2-5-34 ("HALLEX Manual") (S.S.A Sept. 28, 2005). Relevant to the issue at hand, an ALJ may call on an expert opinion from a medical adviser when:

> [T]he ALJ is determining the degree of severity of a claimant's physical or mental impairment; the ALJ has a question about the etiology or course of a disease and how it may affect the claimant's ability to engage in work activities at pertinent points in time, e.g., the ALJ may ask the M[edical]E[xpert] to explain the nature of an impairment and identify any medically contradicted activities; or the ALJ desires expert medical opinion regarding the onset of an impairment.

HALLEX Manual I-2-5-34.

The ALJ must call a medical expert in three instances: (1) when ordered by the Appeals Councilor court; (2) "to evaluate and interpret background medical test data;" and (3) "when the ALJ is considering a finding that the claimant's impairment(s) medically equals a medical listing." See HALLEX Manual.

Accordingly, SSR 83–20 requires a medical expert to determine the onset date when slowly progressive impairments are at issue, the alleged onset and date last worked are far in the past, and adequate medical records are not available. Walton v. Halter, 243 F.3d 703, 709-10 (3d Cir. 2001); Jakubowski v. Comm'r of Soc. Sec., 215 F. App'x 104, 105 (3d Cir. 2007).

In Walton v. Halter, the plaintiff alleged disability on the basis of psychiatric impairment that was slowly progressive, and the alleged onset date was far in the past. 243 F.3d 703, 709-10 (3d Cir. 2001). In addition, adequate medical records for the most relevant period were not available. Id. The court held that the ALJ must call upon the services of a medical advisor in a situation where the alleged impairment was a slowly progressing one, the alleged onset date was far in the past, and adequate medical records for the most relevant period were not available. Id. at 709. Therefore, it was "necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process. An 'informed judgment' was required, a judgment with a 'legitimate medical basis.'" The court reasoned that, an ALJ could not, consistent with SSR 83-20 and the necessity of establishing an onset date based on substantial evidence, draw an inference from the record having no substantial medical support. Id. Lastly, the Court found irony in the sense that the ALJ appeared to recognize his need for expert help–the ALJ noted during the hearing that he "might possibly feel the need to secure a ['medical expert'] subsequently." Id. at 710.

17

In Jakubowski v. Comm'r of Soc. Sec., the plaintiff sought Disability Insurance Benefits Under Title II of the Social Security Act because of osteoarthritis and a total bilateral hip replacement.  215 F. App'x 104, 105 (3d Cir. 2007).  The Plaintiff argued that the ALJ erred when he failed to secure a medical expert to assist him in assessing the severity of her impairments and the onset date.  Id. at 106.  The Court rejected the plaintiff's argument, reasoning that while it is true that "SSR 83-20 dictates that an ALJ should call on the services of a medical advisor when he or she must infer the onset date of the impairment that is not clear form the applicant's medical records," the ALJ had access to adequate medical records in from the time period proceeding the expiration of the plaintiff's insured status.  Id. at 108.  The fact that medical records were available, according to the Court, distinguished the case from Walton. Id.  Further, the Court reasoned, these records did not support her alleged onset date.  Id.

Here, the facts of Plaintiff's case fall between the borders of Walton and Jakubowski.  On one hand, as Defendant correctly argued, there are medical records that were available to the ALJ in determining the onset date.  The presence of medical records suggests that Jakubowski should preside over this case.  On the other hand, in Walton, adequate medical records were not available, and the Court ruled that the ALJ had to call upon a Medical Expert.  To make an informed judgement with a legitimate medical basis, ALJ Lissek should have called upon a Medical Expert.

In Plaintiff's case, there were medical records during the period of the alleged onset, which were provided by Dr. Munin and Dr. Marcelo.  Dr. Marcelo treated Plaintiff only for sinusitis, not arthritis.  Dr. Munin treated Plaintiff for a variety of issues, including arthritis.  ALJ Lissek determined that "[although] these progress notes [from Dr. Munin] were somewhat

illegible, the balance of the progress notes indicated that the claimant's clinical examinations were unremarkable."

While the presence of medical records, a critical factor set forth in Jakubowski, appears satisfied, this Court has serious doubts about their usefulness when "somewhat illegible."  There are eleven pages of notes from Dr. Munin, four of which are computerized, medical test results which are legible.  The other seven pages are largely illegible and the subject of Plaintiff's contention.  The inability to decipher Dr. Munin's notes is similar to the facts of Walton. Here, the complete medical records cannot be read, although some pages are legible, which can be compared to Walton, where  no medical records were available at all. In both cases,  the ALJ cannot be said to have the adequate records and thus a legitimate medical basis on which to make an informed decision.

In addition, ALJ Lissek's apprehensiveness in determining the meaning of Dr. Munin's notes is similar to the ALJ's in Walton.  While the cases involve different severe impairments, both ALJs' uncertainty points to the same end–an insufficient medical record on which an informed decision with legitimate medical basis can be made. Plaintiff's case involved a slowly progressive disability, far in the past, with an inadequate medical record.  Like Walton, the ALJ should have called upon a Medical Expert to analyze Plaintiff's conditions consistent with the requirement of SSR 83-20 to determine the severity of Plaintiff's arthritis.

### V.     CONCLUSION

For the reasons stated above, the final decision entered by ALJ Lissek is **reversed**.  An appropriate order will accompany this opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:          February   28 , 2013